CHEMUNG CANAL TRUST COMPANY, As Trustee of the Fairway Spring Company, Inc., Restated Pension Plan, William H. Brown and Joseph R. Peters, Plaintiffs,

v.

SOVRAN BANK/MARYLAND, Defendant and Third–Party Plaintiff,

v.

FAIRWAY SPRING CO., INC., Theodore Peterson, As President and Director of Fairway Spring Co., Inc., Donald R. Peterson, As Vice–President and Director of Fairway Spring Co., Inc., Dorothy Tarby, As Secretary–Treasurer of

Fairway Spring Co., Inc., and John Doe and Jane Doe, As Members of the Investment Committee of the Fairway Spring Company, Inc., Restated Retirement Income Plan, and Lynn Keyser, Third–Party Defendants.

No. CIV–90–0013T.

United States District Court, W.D. New York.

Dec. 27, 1990.

Edward B. Hoffman, Sayles, Evanas, Trayton, Palmer & Tifft, Elmira, N.Y., for plaintiffs.

Anthony Daniele, Rochester, N.Y., for defendant and third-party plaintiff.

Kenneth A. Payment, Harter, Secrest & Emery, Rochester, N.Y., for third-party defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

### INTRODUCTION

The Chemung Canal Trust Company (Chemung), as the present trustee of the Fairway Spring Company, Inc. Restated Pension Plan (the Plan), and two beneficiaries of the Plan brought this action against Sovran Bank/Maryland (Sovran) pursuant to the Employee Retirement Income Security Act (ERISA). Plaintiffs allege that Sovran, which was trustee of the Plan immediately prior to Chemung, breached its fiduciary duties by failing to exercise prudence and due diligence in discovering and rectifying the wrongful acts

of Glenn Dawson, who had been trustee of the Plan before Sovran. Plaintiffs further allege that Sovran itself made two "disastrous" investments which also constituted a breach of its fiduciary duty.

Sovran then filed a third-party complaint against Fairway Spring Co. (Fairway), the employer who established the Plan, for indemnity and/or contribution, alleging that Fairway is a fiduciary of the Plan, and as a result of its own breach of its duty with regard to the activities of Dawson, it must either indemnify Sovran or contribute to satisfaction of the judgment should Sovran be found liable. Sovran also filed a counterclaim against Chemung Canal Trust, alleging that it failed to evaluate adequately and pursue claims of the Plan and this failure contributed to the losses which are the subject of its present suit against Sovran. It requests relief on behalf of the Plan, as well as contribution and or indemnity should it be found liable.

Fairway, the third party defendant, now moves to dismiss Sovran's third party complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that ERISA does not permit a fiduciary to sue a co-fiduciary for indemnification or contribution. Chemung moves to dismiss Sovran's counterclaim for indemnification or contribution for essentially the same reasons— that ERISA does not allow fiduciaries to seek contribution or indemnity. In addition, Chemung moves to dismiss Sovran's counterclaim on behalf of the Plan because Sovran is no longer a trustee and thus does not have standing to sue. For the reasons discussed below, the motions of Chemung and Fairway are granted and accordingly, Sovran's counterclaims and third-party complaint are dismissed.

## DISCUSSION

### A. SOVRAN'S STANDING TO SUE ON BEHALF OF THE PLAN:

■ The defendant Sovran brings a counterclaim against Chemung on behalf of the Plan, alleging that Chemung breached its fiduciary duty by failing adequately to evaluate and pursue claims of the Plan. Sovran claims that, as a former fiduciary, it has a continuing obligation to address and attempt to remedy breaches on behalf of the Plan. After carefully reviewing the relevant authority, I find that Sovran is without standing to bring such a claim.

Section 409 of ERISA contemplates actions by four classes of plaintiffs: the Secretary of Labor, beneficiaries, participants, and fiduciaries. 29 U.S.C. § 1132. Because Sovran is no longer a fiduciary, it has no standing to sue Chemung on behalf of the Plan. *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir.1979); *see also Molnar v. Wibbelt*, 789 F.2d 244, 250 (3d Cir.1986).

In *Blackmar*, the settlor of a plan governed by ERISA removed the plan's then-trustee and appointed a new trustee in accordance with the provisions of the plan. 603 F.2d at 1308. The former trustee, Charles Blackmar, challenged the settlor's actions, alleging that the settlor breached its fiduciary duty by removing him in order to preclude him from filing a suit against it. *Id.* at 1309. The court held that it could not "deem Blackmar a fiduciary, though he once was, and allow him to bring suit in a fiduciary capacity" when he had been removed in a manner consistent with the trust document itself. *Id.; see also Blassie v. Kroger Co.*, 345 F.2d 58, 67 (8th Cir.1965) ("a fiduciary, after his removal or resignation, does not have sufficient official interest to authorize him to seek appellate review of an adverse judgement...."). The court concluded that, "[i]n short, Blackmar no longer has an interest in this suit." *Blackmar*, 603 F.2d at 1309.

This case presents a situation analogous to that in *Blackmar*. Chemung replaced Sovran as trustee of the Plan, but did not obtain fiduciary status until after Sovran was terminated. Sovran now essentially challenges Chemung's failure to include Fairway in an action against Sovran for breach of its fiduciary duties. ERISA, however, provides adequate protection to plans and their participants, in that either they or the Secretary of Labor have standing to bring suit if Chemung breaches any of its fiduciary duties. *See Blackmar*, 603 F.2d at 1310. Accordingly, because Sovran

is a stranger to the Plan in so far as any alleged breach by Chemung, it has no standing to assert a counterclaim on behalf of the Plan.

## B. SOVRAN'S CLAIMS FOR CONTRIBUTION AND INDEMNITY:

■ Sovran's remaining claims against plaintiff Chemung and third-party defendant Fairway are for contribution and/or indemnity. Essentially, Sovran argues that if it is found to have breached its fiduciary duties, that it should be able to recover all or part of the judgment from Chemung and Fairway, which it claims are also liable.

■ In order to find a cause of action for indemnity and/or contribution, the court must determine either that Congress expressly provided for it or Congress' intent to allow it is clearly implied in the statute, or that the cause of action has become part of federal common law. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981) (holding that no cause of action for contribution and/or indemnity exists under Federal Anti-trust law).

Although the Second Circuit has indicated that a fiduciary *may* be able to seek indemnification from a co-fiduciary under ERISA, it has neither considered nor decided this issue. *See Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989). It is uncontroverted that ERISA does not explicitly provide for fiduciary contribution or indemnity. The parties differ, however, on whether the statute implies a cause of action and whether one exists or should be created as part of the federal common law.

■ Where it is alleged that a statute implies a right of action, the Court must focus on Congressional intent through examination of the legislative history and other factors such as "the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief." *Texas Industries*, 451 U.S. at 639, 101 S.Ct. at 2066.

In enacting ERISA, Congress repeatedly expressed its intent that the statute "establish judicially enforceable standards to insure honest, faithful, and competent management of pension and welfare funds," and "reduce substantially the potentialities for abuse" by fiduciaries. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 140 n. 8, 105 S.Ct. 3085, 3089 n. 8, 87 L.Ed.2d 96 (1985) (remarks of Sen. Bentsen, Sen. Nelson, reprinted in 3 Leg.Hist. 4795, 4803; 120 Cong.Rec. 29954, 29957 (1974)). Nowhere, however, does the legislative history suggest that Congress intended that a fiduciary be allowed to seek contribution or indemnity for a breach of its fiduciary responsibilities.

In fact, Congress has carefully set forth those acts or omissions for which a fiduciary *is* personally liable. *Narda, Inc. v. Rhode Island Hospital Trust National Bank*, 744 F.Supp. 685, 696–97 (D.Md. 1990). For example, a fiduciary is liable for a co-fiduciary's breach *only*

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). As section 1105(a) demonstrates, Congress carefully and narrowly defined the circumstances under which a fiduciary could be held personally liable for a co-fiduciary's breach. *See* 29 U.S.C. § 1105(a)(3); *Narda*, 744 F.Supp at 696. Given Congress' attempts to "precisely tailor fiduciary liability to fit particular breaches, ... [i]t is not surprising that rights of indemnification and contribution among culpable fiduciaries are not provided." *Narda*, 744 F.Supp. at 696. Thus, the intent to allow a fiduciary to sue for

contribution and/or indemnity is absent both from the express language of ERISA and from its legislative history.

Furthermore, a fiduciary is not a member of the class for whose benefit ERISA was enacted. *Id.* (Congress intended to "protect participants, beneficiaries and plans, and remedies are provided to fiduciaries only insofar as they advance that purpose"); *see also Russell,* 473 U.S. at 142, 105 S.Ct. at 3090 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan:...."). The lack of reference to contribution or indemnity, together with the fact that fiduciaries are not members of the class which ERISA was designed to protect, makes it clear that Congress did not intend to imply a cause of action for contribution or indemnity in their favor. *See Texas Industries,* 451 U.S. at 638–39, 101 S.Ct. at 2065–66.

> Indeed, implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution " 'is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans],' " and where there is no indication in the legislative history "that Congress was concerned with softening the blow on joint wrongdoers."

*Kim v. Fujikawa,* 871 F.2d 1427, 1433 (9th Cir.1989) (citing *Texas Industries,* 451 U.S. at 639, 101 S.Ct. at 2066); *Call v. Sumitomo Bank of California,* 881 F.2d 626 (9th Cir.1989); *but see Free v. Briody,* 732 F.2d 1331, 1337 (7th Cir.1984).

Accordingly, if Sovran is entitled to contribution or indemnity under ERISA, the source of such a right must be federal common law. *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2067. The Supreme Court has indicated that federal courts should hesitate to "find" a cause of action in federal common law, and should do so only where it is "necessary to protect uniquely federal interests," or where "Congress has given the courts the power to develop substantive law." *Id.* at 640, 101

S.Ct. at 2067 (citations omitted). In this case, there are no interests which are uniquely federal; "contribution among [ERISA fiduciaries] does not involve the duties of the Federal Government, the distribution of powers on our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." *Id.* at 642, 101 S.Ct. at 2068.

The courts may also fashion federal common law when Congress has empowered them to create guiding rules of law under a comprehensive statutory scheme. *Id.* In enacting a such a statute, Congress may give the courts broad power to develop substantive law consistent with the purpose of the statute. *Id.* at 643, 101 S.Ct. at 2068. Such a grant does not, however, necessarily imply that Congress intended to give the courts equally broad power to formulate enforcement remedies or to fashion additional forms of relief. *Id.* at 643–44, 101 S.Ct. at 2068–69; *see Russell,* 473 U.S. at 147–48, 105 S.Ct. at 3092–93.

■ The Supreme Court has held that courts are empowered under ERISA to develop a substantive common law of rights and obligations under ERISA-regulated plans, consistent with trust principles. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Nevertheless, "the federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Russell,* 473 U.S. at 145, 105 S.Ct. at 3092; *Franklin v. Aetna Life Ins. Co.,* 10 Emp. Ben. Cases 1022, 1026 (D.C.S.C.1988) (adding a cause of action to ERISA in favor of fiduciaries is "not a situation where Congress has empowered the courts to develop substantive law.").

In *Russell,* the Supreme Court recognized ERISA's "carefully integrated civil enforcement provisions" and "interlocking, interrelated, and interdependent remedial scheme," and expressed its reluctance to "tamper with an enforcement scheme crafted with such evident care." 473 U.S. at 146–47, 105 S.Ct. at 3092–93. The Court noted that the courts should be wary of

adding additional remedies under a statute such as ERISA, especially where Congress has provided an integrated and comprehensive remedial plan. *Id.* at 147, 105 S.Ct. at 3093; *See also Northwest Airlines, Inc v. Transport Workers Union,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1583–84, 67 L.Ed.2d 750 (1981); *Texas Industries,* 451 U.S. at 645–46, 101 S.Ct. at 2069–70. When the entire structure of ERISA is examined together with its enforcement provisions, fiduciary liability provisions and legislative history, it must be concluded that Congress did not intend the courts to creat a right of contribution and indemnity in favor of fiduciaries. *See Russell,* 473 U.S. at 148, 105 S.Ct. at 3093.

■ In sum, the courts may develop substantive common law under ERISA only where it is consistent with Congressional intent. *See Russell,* 473 U.S. at 145, 105 S.Ct. at 3092; *Texas Industries,* 451 U.S. at 643–44, 101 S.Ct. at 2068–69. Sovran has not demonstrated that Congress in any way intended that ERISA should benefit fiduciaries. In fact, it is clear that Congress intended to *regulate* the conduct of fiduciaries for the exclusive benefit of pension plans, participants and beneficiaries. Because it would be inconsistent with Congress' stated purposes in enacting ERISA, a right of action in favor of fiduciaries for contribution or indemnity cannot be justified under federal common law.

### CONCLUSION

Having carefully considered the existing authority on the issue of whether or not a fiduciary can assert a claim for contribution or indemnity, this court finds that such a claim is not supported either by statutory interpretation of ERISA or by federal common law. Accordingly, Sovran's third party complaint against Fairway and cross-claim against Chemung for contribution and indemnity are dismissed. In addition, Sovran's cross-claim against Chemung on behalf of the Plan is dismissed because Sovran lacks standing to bring such an action.

ALL OF THE ABOVE IS SO ORDERED.